Thank you, Your Honor. May it please the Court, my name is Quinn Sorensen and I represent the appellant in this matter, Clarence Hoffert. I'd like to request three minutes for rebuttal, if I may. Yes. Thank you. The federal false lien statute, 18 U.S.C. 1512, provides that a crime is committed whenever an individual files a lien against a federal official with having reason to know. Yeah, we got all that. The problem with the statute, the reason it is vague, Your Honor, is because it demarcates the boundary between criminal and non-criminal conduct based not on what the defendant knows or could know, but based upon what a reasonable person would know. The standard has been upheld time and time and time and time again. Well, I'm not sure about time and time and time and time again. It has been upheld against vagueness challenges in a few cases. Well, if you look at the Saffo case from the Tenth Circuit, you'll see an entire column. That is one case. But it's collecting cases and statutes. It cites other statutes which use a similar standard. But what I would say in this case, Your Honor, is that in those cases there is a reason why it can be upheld against a vagueness challenge. So accepting that those decisions were correctly decided, you can make a very material distinction between those statutes and the one we have here. What is that? That is because in those cases, the conduct that is involved in those cases is necessarily indicative of bad faith, which gives the defendant in those cases notice that they are subject to criminal consequences potentially. Well, filing an $8 billion, was it, or million? I forgot whether it was with an M or a B, lien against seven federal officials, doesn't that sort of have right on the face of it bad faith? I do not believe so, Your Honor. Because people that this man never interacted with in his life somehow are going to owe him gigantic sums of money. That's an objectively sensible or reasonable thing to believe. Of course not, Your Honor. I would say that it could be described as delusional, in fact. But the reason that I'm making this point right now is that that is the point, that if it is delusional, and I think if you look at the lien itself, it certainly looks delusional. And that means that this particular defendant did not know that the conduct was, that his filing was false. He just did not understand it. A jury could disagree with you, right? They certainly could, but we don't know. A jury could look at his testimony and say he's not delusional, he's just a liar. They certainly could, Your Honor, but you cannot presume this because we do, getting back to the last case, we have a general verdict here in which the question that was posed to the jury was whether Mr. Hoffert knowingly or having reason to know of the falsity of the document filed these liens. So that standard has been repeatedly held to include a subjective and an objective component, so that the question the jury is given is based on what this person knew, and he testified in his own behalf. Could you say that what he believed was, or what he testified to, was objectively reasonable? How is that outside the realm of ordinary criminal standards of the sort that the Saffo case lays out multiple examples of? Well, you referenced there that the having reason to know standard requires an inquiry into the defendant's own subjective intent. You said that it's a subjective component to it. I would disagree a bit with you, Your Honor. What the reasonable person standard, the having reason to know reasonable person standard, actually requires is not an inquiry into the state of mind of the defendant at the time the lien is filed. What it actually asks is the state of mind of a reasonable person who shares some, not all, perhaps, of the characteristics of the defendant. So it is not the defendant's knowledge we are talking about. Well, it is. Isn't this just, I mean, going back to Gorin where the court looks at this intent or reason to believe standard and says this requires the prosecution, the prosecuted, to have acted in bad faith. The sanction applies only when scienta is established. In other words, there has to be a showing of subjective bad faith. I think that gets to my point that I was making, Your Honor, in that the reasonable person standard itself does not require or even allow an inquiry into the subjective intent of the individual, and that's what the United States v. Williamson held in the Tenth Circuit. But what Gorin holds is not that it requires a subjective inquiry necessarily, but that the conduct itself is sufficient to show that the defendant acted in bad faith or with criminal culpability. I'm just not following. No, I understand your honesty. I've read Gorin. I'm reading it right now. It just quoted it to you. It said the delimiting words of the statute, and then it quotes the statute intent or reason to believe the information obtained is used to the injury of the United States, et cetera, and then it says this requires those prosecuted to have acted in bad faith. And it's a statement that that standard, which is not materially different from this standard, requires a showing of subjective bad faith. I think that what the court is referring to there, and if I may explain, the Espionage Act in that case provides that a person commits a violation when they obtain, intentionally obtain information that may be harmful to the interests, national defense interests of the United States by a foreign adversary. And the court goes on to say in that case somebody who proceeds on that basis is necessarily, that's the conclusion there. You don't have to go down the rabbit hole on the Espionage Act because that's not the point that the court is focused on there. It's not so much the Espionage Act. It's talking about the have reason to believe part, isn't it? No, I do not. I think that, oh, I think they are talking about that, but I think what the court is doing is saying have reason to believe may be vague in its own application itself. But look at the rest of this statute. The conduct it is prohibiting is going to necessarily involve bad faith because we have an individual at an upper echelon of government who is intentionally obtaining information that could be used to harm the United States. And regardless of whether they have merely. I would say just as easily in that context. Well, I didn't know that this was going to harm the United States. I had no idea this was going to harm the United States. In fact, couldn't you say that much more plausibly than I had no idea that a $7 billion lien against these judges was going to be something difficult or problematic? I thought it was entirely justified in that. I don't believe so at all, Your Honor, actually. And I believe because the situation in that case, as explained by the Supreme Court, was that these people are going to be at a higher level of government. They'll have access to it. So they would know at that point in time. What somebody like Mr. Hoffert, who is, again, you can almost make the conclusion that this was a delusional request. And in that case, you cannot say that it's simply he knew. No, he was. And that's what. I'm puzzled by your delusional assertions because his testimony at trial didn't indicate he was delusional. He had a reason. I'm sorry? He had a reason for doing this. He did. But it was a delusional reason, and that's the point. It was a bad reason, but it wasn't delusional. It may not. I wanted notoriety. It may not have been, but if we're looking straight. I wanted to make a stink, so I did. Well, we can talk about the particular facts of this particular case, but that's getting a little bit beyond what the actual statute is. And again, the statute, we're only looking at somebody who does not have knowledge, but has reason to know because that's the standard we're looking at. And that particular standard can be satisfied whether or not the defendant has knowledge or not. That's the basis of the standard. So for you to win, we would have to accept that this standard doesn't include any subjective component at all? No, that's not what I am arguing, Your Honor. What I am saying is what the reason. And this is actually, if you look at Williamson, this is the explanation. It goes, it's 10th Circuit, builds off of Sappo. And what it says is the reasonable person standard certainly does have a subjective component. What that subjective component does is instruct what that reasonable person should look like, what characteristics. No, it doesn't. Williamson says, quote, this standard may be said to include both a subjective component, that is, what information this particular defendant had, close paren. That's what I'm saying. That's the subjective component for Williamson. Exactly. That's what information the person has. That's not their state of mind. The ultimate question is what would that reasonable person believe? And if you look after that paragraph, that's when Williamson concludes that a good faith instruction would be inconsistent with the reasonable person standard. But Williamson is inconsistent with the prior precedent, Sappo. I don't believe so. Actually adopted Gorin and said it needs bad faith. In fact, Williamson is somewhat curious in that regard, because in Sappo they specifically cited to Gorin and said this requires those prosecuted to have acted in bad faith. I think that is exactly getting to the distinction that I was making, and that's what reconciles those cases. Gorin found that the bad faith arose because of the other conduct that was involved in the statute. That's where the bad faith came from. Sappo explained that, yes, we have a reasonable person standard, and we can find that that's sufficiently. And Williams went on to say a good faith instruction is inappropriate with respect to the have reason to know or have reason to believe standard itself, because we might have bad faith involved in the drug distribution conduct anyway. Well, it's because I understood Williamson to be saying you don't need a good faith instruction because you can't convict somebody unless there's a lack of good faith. It's impossible for you to convict somebody under this standard unless there is scienter, unless there is bad faith as per Gorin, as per Sappo, which was binding on the Williamson panel. You don't need a good faith instruction because it's built into the system. There's no liability unless there is bad faith. Like I said, I respectfully disagree, Your Honor, because I think the nature of the reasonable person standard necessarily is that you're assessing at the end of the day whether a reasonable person would have viewed the thing as false. And whatever characteristics that reasonable person had, if they're all the characteristics, some of the characteristics, knowledge of the defendant, the ultimate question is his or her state of mind. And the good faith instruction goes to the state of mind of the defendant, so it can't apply if you're asking what the reasonable person believes. How did the district court err in its finding, in its conclusion? In finding that it was not vague, Your Honor? Well, as applied to him. What are we going to do? I think this statute is vague in literally all of its applications with respect to the have reason to know standard. All right. Let's assume it isn't. Okay. Then how did the district court err in applying both the reason to know test, the reasonable person with these characteristics, et cetera, and giving good faith as a total defense? You instructed the jury, if you find good faith, it's a total defense. Well, based upon the, like I said, I would argue, and that's what it was argued below, that there should not be a good faith instruction, could not be that requirement, as a matter of the statutory interpretation. And in that case, the statute is invalid. Once we got to the jury instructions in this case, the court had already ruled that a good faith instruction was appropriate, and that's, we renewed the. You could have gotten out on that instruction, right? I'm sorry? Hofford could have won on that instruction if the jury found, oh, it was in good faith. Well, I don't believe so, Your Honor. And the instruction actually appears at 248 of the appendix. And what the district court instructed was not only that inconsistent with the reasonable person standard for the reasons I've discussed, but also it said that the person does not act with good faith if he makes a misstatement. And it wasn't a misstatement in the lien itself. It was simply a misstatement generally. So there is a host of statements that the jury could have considered that, hey, this isn't good faith because he made a misstatement, that he said that a retired federal judge advised him as to something. I would say that an honestly held reasonable belief that his acts were not unlawful would provide a complete defense. Yes, that's exactly right. But like I said, there was confusing elements to it. And in any event, even if the instruction was a good standard under the good faith instruction, and it did match the model instructions for pretty much tone for tone in certain respects, still if the underlying standard was vague and is vague in its own application, the fact that there was this instruction does not render the conviction valid. Okay. Thank you very much, Mr. Schwartz. We'll hear from your opposing counsel. Good afternoon, Your Honor. May it please the court opposing counsel. My name is John Cantillo. I represent the United States. Title 18, section 1521 is neither unconstitutionally overbroad nor vague. And the conviction at the district court was supported by sufficient evidence. To find otherwise regarding the constitutional issues, as the appellate asked you to do, would require this court to find an opposite of over half a century's worth of Supreme Court case law, as well as find an opposite of the Fourth, Fifth, Sixth, Ninth, and Tenth Circuits. Why don't you hit the Tenth Circuit and specifically the Williamson case that your opponent relies on so heavily? I understand his argument to be that the only subjective component is what was known to the defendant, and that's different from a scienter question, and therefore this is different from Gorin, and it's a flawed statute. Maybe I'm putting words to his mouth, but I kind of took that from what he was saying to us. Is that wrong? Your Honor, I think what Williamson is identifying is that, exactly as Your Honor put it during the appellant's argument, that there is... We're just asking questions, Mr. Cantillo. Okay? And the question to you is, that statement from Williamson limits the subjective component to what information the defendant had. It doesn't say anything about scienter. I think what Williamson is getting at is, if you look at everything that the defendant knew and you put a reasonable person in his position, would they have reason to know that the lien was false, that what they were filing was false? And I think it recognizes kind of a core tenet of our law that you can't just put your head in the sand and ignore reality around you and just say, well, I didn't know. It's axiomatic that ignorance of the law is no defense, and I think Williamson is a recognition of that principle, that you don't need a good faith instruction because you can't violate Title 18, Section 1521 in good faith. The scienter of Gorin would still, as mentioned in Gorin, would still apply. So recognizing that principle, there have been a number of challenges to 1521 for exactly this same purpose. And the statute is not overbroad because overbreadth deals with, does this prescribe a substantial amount of protected speech? Well, here there is no protected speech. In the Fourth Circuit in United States v. Nebaia, when facing an overbreadth challenge to Section 1521, found specifically fraud is not protected speech. Certain types of false statements, the Supreme Court has routinely recognized as being protected speech. Baseless litigation is not protected speech. That's exactly what we have here in the underlying case. These are false statements, fraud to get $8 billion in the tort claim, and then $7 million, I believe, in the 1983 actions, or in the liens themselves. So that's not protected speech as recognized by the Supreme Court. However, even if it were, this still would not be an overbroad statute. The first step is to construe the statute. And the aperture that the appellate has asked you to look at this is, as if it were just liens writ large, just filing false liens writ large is what this statute is prohibiting. But this is filing false liens against federal employees in retaliation for them in the performing their duties. So this is a very narrow aperture through which this statute is applying. So it's very difficult to imagine a scenario where this would impact protected speech. And, you know, as the Supreme Court recognized in Williams that, you know, this is strong medicine. And I would put to you that this is medicine for a disease that this statute doesn't suffer from. Similarly, not unconstitutionally vague. I think that deals more with can you even define what the statute is prescribing. Here, it's very clear. I don't think you're going to hear any questions about whether it's clear or not. It seems pretty clear. I would agree, Your Honor. And then in terms of sufficiency of the evidence, I mean, it's very clear that not only did the defendant, did Mr. Hoffert have reason to know, he knew that this was a false lien. He sent a letter in 2012 to the court of records, the clerk of records in Lebanon County, asking for his sentencing documents and stated in his letter, I know I have five years and seven months remaining in my sentence. So he knew he was lawfully imprisoned. He knew how long he was supposed to be there as well. And despite this, he files a seven billion seven million dollar lawsuit saying that he's unlawfully imprisoned. And the magistrate judge, now district court judge, Susan Paradise Baxter, in her report and recommendation in the 1983 claim, told the defendant, the sole way for you to get the relief that you're seeking here is through a habeas petition. Not one of the ways, not one of many ways, the sole way. What is your position regarding the need for a good faith instruction? I mean, here one was given, so I'm still convicted. But what's your position as to whether Williamson or Chief Judge Conner were correct, that one is actually necessary? Well, as was argued in the district court level, I don't believe a good faith instruction is necessary. And I think Williamson kind of recognized that it's. It's assumed. That's exactly right, Your Honor, that you cannot act in good faith. If you cannot, if you had a reasonably held belief, then you can't. A reasonable person wouldn't have thought that this was a false lead. So based on that and at trial, the defendant was given that good faith instruction and still the jury convicted him. So based on based on all of that. I think it takes a lot to overturn the jury and assume that role and take that away from the jury. And here there just isn't the facts or anything that should allow this court to do that. Thank you. Thank you very much. I believe some of the questions and I think what is what I would submit is that if this statute, if the reason to no standard itself cannot be interpreted as possessing a good faith requirement, that is one that goes back to the, as you were talking about, Judge Jordan, to the center of the actual defendant rather than purely to the center of a reasonable person. It cannot be held constitutional because without that bad faith requirement or some other culpability requirement that the defendant himself or herself be found to possess, you cannot have fair notice of the crimes that they should know that the crime is going to be. So if we if we thought this standard was effectively the same as the standard in Gorin, you would you would recognize that that your client would lose. I would not, Your Honor, because I think Gorin predicated its decision, as I said, on on the other conduct constituting bad faith, not the reason to believe standard itself. You may say you believe that, but point me to any language in the opinion that says that I can. Any language in the opinion at all that says, you know, this have reason to language. We're interpreting this because this is the Espionage Act. And outside that context, we'd be worried. I think that's what the court did in that major paragraph in which it went through and said exactly what the problem with the Espionage Act is part that I read. Yeah. And it says somebody cannot proceed reasonably. So that's fine. If that's the language you're relying on, fine. Thank you, Your Honor. And to go forward, then, if we want to. In this particular case, I do think that there was a dearth of evidence entirely that that even a reasonable person with Mr. Hoffert's characteristics. Now, if we go down that road and actually imbue the reasonable person with his characteristics, with his knowledge, with his history, Mr. Hoffert didn't have a high school diploma. He had no legal training. He prepared the and filed the lien based on advice from a spiritual advisor. Well, why don't you address what Mr. Cantile just pointed out, which is he knew he was supposed to be in prison. He'd written a letter in which he acknowledged what the length of his sentence was. And he explained why he filed the liens. He knew exactly. He said why he did it. He wanted attention. He wanted to bring attention to the fact that he was still in prison and he didn't like being in prison. I think that exactly is indicative of good faith, actually, in certain respects. And that is because Mr. Hoffert submitted the letter to ask what was his sentence. He received and he said, I know what my sentence is, but that doesn't say that his sentence was lawfully imposed. And that's what his problem was. He knew they didn't owe him any money. No, he didn't. A lien is filed because you're owed money. Well, I don't know where that comes in the record. There's nothing in the record that indicates. Specifically, I didn't think that they were going to have to suffer any monetary harm. That was because they were, quote, bonded. You don't think that's a direct acknowledgment that he recognized that there was a monetary hurt? No. And that he didn't think that it was going to happen to him? Because if he had thought it was going to happen to him, he wouldn't have done it. No. He thought that they were subject to a performance bond, which is wrong. But in any event, I say that. Thank you very much. All right. Thank you very much. We appreciate counsel coming in to argue the case. We've got it under advisement. We'll call the last.